## TRUDEAU v. BARNES.

### No. 20903.

District Court, E. D. Louisiana.

Nov. 3, 1932.

H. W. Robinson, of New Orleans, La., for plaintiff.

Hugh M. Wilkinson, of New Orleans, La., for defendant.

BORAH, District Judge.

This is an action at law brought pursuant to the provisions of title 8 USCA § 43, wherein the plaintiff, Antoine M. Trudeau, a colored man and a member of the Negro race, is seeking to recover damages against Charles S. Barnes, registrar of voters for the parish of Orleans, for alleged deprivation of the civil right to register as a voter in elections.

The petition is divided into two alternative causes of action, both having as their bases the same alleged state of facts. Pretermitting the arguments of law and conclusions to which the petition is largely devoted, the pertinent allegations of fact are that on June 18, 1931, Trudeau applied for registration, and was furnished with a registration blank form, and was requested to fill it out in his own writing with his name, place and date of birth, age, ward, residence, and all other data required thereon; that he duly and correctly filled out all the blanks on the said form in his own handwriting, and returned the form to the said Charles S. Barnes, registrar, who then demanded that petitioner read the paragraph from section 1, article 8 of the Constitution of the state of Louisiana containing the understanding clause, which is as follows: "Said applicant shall also be able to read any clause in this Constitution, or the Constitution of the United States, and give a reasonable interpretation thereof"; and that he explain the meaning of the paragraph; that "petitioner correctly read the said section, and sought to explain its meaning, but the said Charles S. Barnes arbitrarily declared that your petitioner had not perfectly understood and explained the meaning thereof, and refused your petitioner the right to register."

I take it to be fundamental that, in order to state a case showing a denial of the right to register, the plaintiff must allege as a matter of statement of facts and not by mere conclusions that he not only possesses the qualifications but that he has observed those proceedings fixed by law as conditions precedent to registration. This requirement is not met by the averment that he "duly and correctly" filled out the application form because this language only expresses the conclusion of the pleader; nor is the constitutional requirement that the applicant must be able to give "a reasonable interpretation" of "any clause" in the state or Federal Constitution satisfied by the averment that he "sought to explain its meaning." A further analysis of the petition indicates a studious

effort on the part of plaintiff to comply with this fundamental rule of pleading, in that he endeavors to track the requirements of section 1, article 8, of the Constitution of 1921, by setting forth facts showing his qualifications to register as a voter in Louisiana. Without pausing to particularize as to whether or not the allegations cover the items of qualification for which they were intended, sufficient be it to say that the petition does not allege: (1) That plaintiff is an actual bona fide resident of the precinct in which he offered to vote; (2) that he understands the duties and obligations of citizenship under a republican form of government; (3) that he has made under oath administered by the registration officer or his deputy application for registration which application contained the essential facts necessary to show that he was entitled to register and vote and which application was entirely written, dated and signed by him in the presence of the registration officer or his deputy without assistance or suggestion from any person or any memorandum whatever other than the form of application; (4) that he is able to read any clause in the Constitution of the State of Louisiana or the Constitution of the United States and give a reasonable interpretation thereof or, more particularly, that he did give a reasonable interpretation of the clause actually indicated to him by the defendant when he applied for registration.

Because of these omissions, the defendant has interposed an exception of no right or cause of action, contending that it is immaterial to this suit whether the understanding clause of the Louisiana Constitution conflicts with the Fourteenth and Fifteenth Amendments or not, since the plaintiff has not shown that he possesses the right to register under the other requirements of the Louisiana law which are not attacked in this suit; and if, as defendant contends, the understanding clause be valid, then plaintiff is also out of court because of his failure to allege his compliance with the understanding clause by giving the "reasonable interpretation" required of him.

Reverting again to the petition, it will be observed that the theory upon which plaintiff is proceeding in this action is not altogether clear. It will be remembered that, when the plaintiff was asked to explain the meaning of the paragraph which was indicated to him by the registrar, he said that he "correctly read the said section, and sought to explain its meaning, but the said Charles S. Barnes arbitrarily declared that your petitioner had not perfectly understood and explained the meaning thereof, and refused your petitioner the right to register." This language is to be found in article IV. In article VI plaintiff alleges: "That he was in every way qualified for registration as a voter under the validly adopted provisions in the constitution and laws of Louisiana; and the failure and refusal of the said Charles S. Barnes to register your petitioner, as aforesaid, was wholly wrongful, unlawful, arbitrary and capricious, and without legal justification or excuse." Article IX alleges that: "Your petitioner shows that the said 'understanding' clauses were in fact utilized by the said Charles S. Barnes as a cloak for refusing to register your petitioner, and for depriving him of the right to vote at all elections held in the Parish of Orleans during the ensuing four years, solely because your petitioner is a member of the Negro or colored race; that the said 'understanding' clauses have likewise been utilized and administered by the said Charles S. Barnes, Registrar of Voters, and his deputies in the State of Louisiana so as to carry out the purpose for which these clauses were adopted and to deprive large numbers of negro citizens resident in Louisiana of the right to vote at public elections solely because of their race or color." In article XV appears this language: "Your petitioner shows, in demonstration of the arbitrary and unequal application of the 'understanding clause' in the State Constitution by said Charles S. Barnes" that practically all of the registered voters in precinct 1 of ward 5 of the parish of Orleans, none of whom could correctly comply with the understanding clause of the state Constitution, were registered by the defendant without their compliance therewith in furtherance of the intent of the suffrage clause of the Louisiana Constitution to give suffrage to all white adults and deny registration and voting to all colored persons. The petition also alleges that the defendant refused to register certain numbers of people, and sets forth statistics to show that the number of colored people actually registered is very small. It further charges that the defendant wrongfully refused certain people registration because they were negroes and allowed other persons not negroes and not of proper understanding to register. All of which would indicate that the plaintiff was not attacking the law as being unconstitutional on its face, because these results could only have been caused, if at all, by the administration of the law.

A further examination of the petition,

however, would seem to indicate that the first ground of attack is not based upon this theory, as the petition recites in article VII: "That the said Charles S. Barnes based his failure and refusal to register your petitioner, as aforesaid, solely and entirely upon the so called 'understanding clause' contained in subsection (c) of section 1 of article 8 of the Constitution of the State of Louisiana adopted in the city of Baton Rouge on June 18, 1921." Article 8 alleges that the understanding clauses were devised and enacted as a substitute for the so-called "grandfather clause" in the Louisiana Constitution of 1898, in order to continue the unconstitutional exclusion of negro citizens, solely because of their race or color, from the right of suffrage. In article XI it is alleged that: "The said clause in Subsection (c) of section 1 of Article VIII of the Louisiana Constitution of 1921 requiring literate applicants for registration as voters in the State of Louisiana to be able to 'give a reasonable interpretation' of any clause in the said constitution or the Constitution of the United States, and the clause in Subsection (d) of the said Section 1 of Article VIII requiring illiterate applicants for registration to 'be able to understand and give a reasonable interpretation of any section' of the said constitutions 'when read to him by the registrar' are null and void because they are contrary to and violative of" the Fourteenth and Fifteenth Amendments and section 2004 of the U. S. Revised Statutes (8 USCA § 31).

It will serve no useful purpose to analyze the petition in greater detail, as it is believed that sufficient observations have been made to illustrate the difficulty in determining from the pleadings the precise theory upon which plaintiff relies in stating his first cause of action. It will be helpful in this connection to note what the pleader in brief has to say on the subject. The following is an excerpt therefrom:

"* * * We are not complaining of him (defendant) because he failed to comply with any requirement of the Louisiana Constitution, but we are complaining of him because he obeyed the Louisiana Constitution by refusing us registration, because he demanded of us that we read and interpret a clause of the Constitution, which we contend is an unconstitutional requirement.

"If in our petition we set forth that we correctly interpreted the Constitution and recited word for word the interpretation we gave, and claimed that this was an accurate and reasonable interpretation, we would then be asking that the Louisiana Constitution be enforced—the very contrary is our contention. We say it is immaterial whether or not we correctly and reasonably interpreted the Constitution, it would be immaterial whether we refused to make the effort, all that is material is that the 'understanding clause' is wholly contrary to the Federal Constitution, and we should not have been required to interpret it as a preliminary to registration.

"Under our theory it is, of course, unnecessary to plead the language in which we sought to explain the Constitution, all that we pleaded is a recitation of what took place in the Registrar's office."

At the trial the court requested counsel to explain the theory upon which plaintiff was proceeding for a second cause of action, because the pleadings seemed to be of doubtful construction, and it was thought that they were susceptible of the interpretation that plaintiff was proceeding on the theory that the understanding clause was fair on its face but unconstitutional because of the evil manner in which it was administered. In response to this inquiry, counsel stated in substance that he was proceeding on the theory that the understanding clause was unconstitutional because the lawmaker, by imposing an arbitrary, unreasonable, and capricious qualification upon the right of petitioner and other residents and citizens of Louisiana to register as voters, and by conferring unlimited, unguided, and arbitrary power upon the registrar of voters, thereby intended to deprive large numbers of negro citizens resident in Louisiana of the right to vote solely because of their race or color.

It may therefore be assumed for the purpose of decision that the announced theories upon which plaintiff is proceeding are supported by the pleadings. The plaintiff rests his case entirely on two decisions of the United States Supreme Court: Guinn & Beal v. United States, 238 U. S. 347, 35 S. Ct. 926, 931, 59 L. Ed. 1340, L. R. A. 1916A, 1124; Myers v. Anderson, 238 U. S. 368, 35 S. Ct. 932, 935, 59 L. Ed. 1349. But he evidently misinterprets these decisions, for they are clearly distinguishable from the case at bar, in that the state laws therein involved were openly and on their face discriminatory, and were held to be unconstitutional, not on account of their provisions as to educational qualifications, but on account of the presence therein of so-called "grandfather clauses"; that is, clauses which make the right to vote dependent on conditions existing at a date prior to the adoption of the Fifteenth

Amendment. In the Guinn Case the court said: "No time need be spent on the question of the validity of the literacy test, considered alone, since, as we have seen, its establishment was but the exercise by the state of a lawful power vested in it, not subject to our supervision, and, indeed, its validity is admitted."

In the Myers Case the court had occasion to consider the right of a state to impose a property qualification test as a standard for registering and voting, and said: " * * * We put all question of the constitutionality of this standard out of view as it contains no express discrimination repugnant to the 15th Amendment, and it is not susceptible of being assailed on account of an alleged wrongful motive on the part of the lawmaker or the mere possibilities of its future operation in practice and because as there is a reason other than discrimination on account of race or color discernible upon which the standard may rest, there is no room for the conclusion that it must be assumed, because of the impossibility of finding any other reason for its enactment, to rest alone upon a purpose to violate the 15th Amendment."

Applying this language to the educational test, it would seem to completely answer all of the plaintiff's contentions in this case.

Disregarding the construction which plaintiff places on the allegations that were intended to state a second cause of action, the petition would nevertheless seem susceptible of the construction that the law in question is unconstitutional, not only because it was intended to discriminate against petitioner and members of his race, but because as a matter of fact it was discriminatory in its operation. However, this construction of the pleadings would not alter the situation, because the plaintiff has failed to allege that he complied with the Louisiana law and in spite of which compliance was discriminated against. His averment that he "sought to explain" the meaning of the constitutional clause submitted to him does not fulfill the requirement of the Constitution, and, in further view of counsel's admission as to the insufficiency of his averment regarding "reasonable interpretation," it is apparent that plaintiff has not stated a cause of action even under this construction of his second alternative claim. Williams v. Mississippi, 170 U. S. 213, 18 S. Ct. 583, 42 L. Ed. 1012; Yick Wo v. Hopkins, 118 U. S. 356, 6 S. Ct. 1064, 1069, 30 L. Ed. 220.

The plaintiff endeavors to bring himself within the ruling of the case last cited by alleging that the law complained of confers unguided and arbitrary power upon the registrar of voters, but it must be remembered that, while the registrar under Louisiana law has certain inquisitorial functions to perform, and is vested with the subordinate right of decision to enroll a voter, yet, in the exercise of this discretion, he is subject to control by review. It therefore cannot be said of him, as the Supreme Court said in the Yick Wo Case, that the power thus conferred "is purely arbitrary, and acknowledges neither guidance nor restraint." Instead of sustaining the plaintiff, this decision and the Mississippi Case support the defendant's contention that there is nothing direct and definite in the allegations of plaintiff's petition regarding the alleged discriminatory treatment he received. See Wiley v. Sinkler, 179 U. S. 58, 21 S. Ct. 17, 45 L. Ed. 84.

Considering every possible construction that can be placed on the pleadings, I have concluded that plaintiff's petition discloses no right or cause of action. This conclusion precludes the necessity of considering the other exceptions that are raised in defendant's motion to dismiss.