# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

## No. 97-60275
_____

**Jarvious Cotton, et al.,**

**Plaintiffs,**

**Keith Brown,**

**Plaintiff-Appellant,**

**versus**

**Kirk Fordice, et al.,**

**Defendants-Appellees.**

_____

**Appeal from the United States District Court
for the Southern District of Mississippi**
_____

October 15, 1998

Before GARWOOD, JONES, and WIENER, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellant Keith Brown[1] is serving a sentence for armed robbery in a Mississippi state penitentiary. He wants to vote and complains, via a § 1983 suit, that the appellees unconstitutionally disenfranchised him. The Mississippi Constitution denies the ballot to any person "convicted of murder, rape, bribery, theft, arson, obtaining money or goods under false pretenses, perjury, forgery,

---

[1]This appeal originally included both Keith Brown and Jarvious Cotton. Cotton's appeal, however, was severed and dismissed pursuant to 28 U.S.C. § 1915(g).

embezzlement or bigamy." MISS. CONST, art. XII, § 241 (1890).  Brown argues that because the Mississippi Constitution does not expressly list 'armed robbery' as a disenfranchising crime, he has retained the right to vote.  Not only did the district court hold that the term 'theft' in § 241 includes the crime of 'armed robbery'; the court also rejected his alternate contention that the disenfranchising provision is unconstitutional because it was enacted with racially discriminatory motives.  See Hunter v. Underwood, 471 U.S. 222, 105 S. Ct. 1916 (1985).  Although it appears that the constitutional disqualifying provision originally intended to discriminate against black felons, its recent re-enactment by the people of Mississippi has not been shown to bear that taint.  We affirm.

## II.  Standard of Review

A district court's grant of judgment as a matter of law is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-24, 106 S. Ct. 2548, 2552-53 (1986).  Using the same standard on appellate review, all fact questions must be viewed in the light most favorable to the non-moving party, and questions of law are reviewed *de novo*.  Hassan v. Lubbock Indep. Sch. Dist., 55 F.3d 1075, 1079 (5th Cir.), cert. denied, 516 U.S. 995, 116 S. Ct. 532 (1995).  Once the moving party meets its burden, the burden shifts to the non-moving party to produce evidence sufficient to show the existence of a material fact.  See id.

## III.  Discussion

Brown first argues that § 241 does not apply to him because it disenfranchises persons convicted of 'theft' and not those convicted of 'armed robbery.'  The district court held, however, that 'armed robbery' is included in Mississippi's definition of "theft" because "robbery is the highest category of theft."  The court's conclusion is persuasive.

2

Neither the Mississippi caselaw or statutes resolve whether 'theft,' as used in § 241, includes the crime of 'armed robbery.' The federal courts' task is to determine as best we can how [the Mississippi Supreme Court] would rule if the issue were before it." Federal Deposit Ins. Corp. v. Abraham, 137 F.3d 264, 268 (5th Cir. 1998) (citation omitted). In law, 'theft' is a general label for statutorily created crimes involving an unlawful taking.[2] At common law, theft was defined as "the felonious taking and carrying away of the personal property of another with intent to convert it to the use of the taker without the consent of the owner." McLaughlin v. City of Canton, 947 F. Supp. 954, 970 n.18 (S.D. Miss. 1995) (quoting 52A C.J.S. Larceny § 1(2), at 398 (1968)). Similarly, Mississippi defines 'larceny' as "taking and carrying away, feloniously, the personal property of another." MISS. CODE ANN. § 97-17-41 (Supp. 1998). The Mississippi Code labels various theft crimes as larceny,[3] receiving stolen property,[4] robbery,[5] extortion,[6] and so forth. At least one other court has broadly interpreted § 241 to conclude that 'theft' is an "umbrella term" to describe those crimes that involve a "wrongful taking." McLaughlin, 947 F. Supp. 954, 970 n.18 (S.D. Miss. 1995) (citation omitted). As there is no crime labeled 'theft' in Mississippi, the term in § 241 is only meaningful it if includes the larceny crimes, and thus includes armed robbery.

We also find it persuasive that in Mississippi, larceny (common law theft) is a lesser included offense of robbery. See Holly v. State, 671 So.2d 32, 45 (Miss.), cert. denied 518 U.S.

---

[2]Theft is the "popular term for larceny," BLACKS LAW DICTIONARY 1477 (6th ed. 1990).

[3]See MISS. CODE ANN. § 97-17-41 (Supp. 1998).

[4] See id. at § 97-17-70 (1972).

[5]See id. at § 97-3-73.

[6]See id. at § 97-3-82.

3

1025, 516 S. Ct. 2565 (1996) ("[O]nce the State proved the elements of robbery, it was not required to offer any additional proof to establish the charge of grand larceny."). Thus, for double jeopardy purposes, the relatedness of the crimes is clear. See id. at 44. Because the term 'theft' in § 241 must generically include a conviction for 'armed robbery,' Brown is disenfranchised under Mississippi law.

Appellant next argues that § 241 is unconstitutional because it was originally drafted with the intent to disenfranchise blacks. Section 2 of the Fourteenth Amendment does not prohibit states from disenfranchising convicted felons. See Richardson v. Ramirez, 418 U.S. 24, 54, 94 S. Ct. 2655, 2671 (1974). A state law prohibiting exercise of the vote, however, is unconstitutional if "its original enactment was motivated by a desire to discriminate against blacks on account of race and the section continues to this day to have that effect." Hunter, 471 U.S. at 233, 105 S. Ct. at 1922. Once a plaintiff proves that racial discrimination was a motivating factor behind the enactment of the law, "the burden shifts to the law's defenders to demonstrate that the law would have been enacted without this factor." Id. at 228, 1920 (citing Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 576 (1977)).

The state defendants do not dispute that § 241 was enacted in a era when southern states discriminated against blacks by disenfranchising convicts for crimes that, it was thought, were committed primarily by blacks. See Hunter, 471 U.S. at 229-31, 105 S. Ct. at 1920-22; Ratliff v. Beale, 20 So. at 868; McLaughlin, 947 F. Supp. at 976-78. Mississippi's complicity in this practice was recognized by its Supreme Court six years after the original adoption of § 241. See Ratliff, 20 So. 868; see also McLaughlin, 947 F. Supp. at 976-78. Although § 241 was facially neutral and technically in compliance with the Fourteenth Amendment, the state was motivated by a desire to

4

discriminate against blacks. Cf. Williams v. State, 170 U.S. 213, 18 S. Ct. 583 (1898) (finding that § 241 was constitutional because it was facially race neutral).

Were this the end of the story, we would be bound by Hunter, which, construing an Alabama provision of similar age and intent, held it violative of equal protection. Hunter, however, left open the possibility that by amendment, a facially neutral provision like § 241 might overcome its odious origin.[7] That is what has happened here.

Section 241, as enacted in 1890, was amended in 1950, removing 'burglary' from the list of disenfranchising crimes. Then, in 1968, the state broadened the provision by adding 'murder' and 'rape'--crimes historically excluded from the list because they were not considered "black" crimes. See McLaughlin, 947 F. Supp. at 977. Amending § 241 was a deliberative process. Both houses of the state legislature had to approve the amendment by a two-thirds vote. The Mississippi Secretary of State was then required to publish a full-text version of § 241, as revised, at least two weeks before the popular election. See MISS. CODE ANN. § 4211 (1942); H. Con. Res. 10 (Miss. 1950); H. Con. R. 5 (Miss. 1968). Finally, a majority of the voters had to approve the entire provision, including the revision. Because Mississippi's procedure resulted both in 1950 and in 1968

---

[7]The Supreme Court left open whether such constitutional alterations could cure an originally defective constitutional provision. See Hunter, 471 U.S. at 232-33, 105 S. Ct. 1922. In Hunter, the State of Alabama argued that its disenfranchising clause was constitutional because each of the obviously discriminatory crimes contained in the original provision had already been struck by the courts. The Court declined to address the issue and instead reiterated that Alabama's provision was unconstitutional because it was originally enacted out of a desire to racially discriminate and the discriminatory effect still existed.

in a re-enactment of § 241, each amendment superseded the previous provision and removed the discriminatory taint associated with the original version.[8]

Viewed in this light, § 241 as it presently exists is unconstitutional only if the amendments were adopted out of a desire to discriminate against blacks. See Hunter, 471 U.S. at 228, 105 S. Ct. at 1920. Brown has offered no such proof regarding the current version of § 241; he relies exclusively on the Mississippi Supreme Court's now-irrelevant admission in Ratliff that the original version of § 241 was adopted for the purpose of discriminating against blacks.

Because the motives of Mississippi's legislature and voters when § 241 was re-enacted are not impugned, and because § 241 now seeks only to penalize all criminals convicted of certain crimes, Hunter does not condemn § 241.[9]

For these reasons, the district court's judgment is **AFFIRMED.**

---

[8]The changes made to § 241 are fundamentally different from those made to the Alabama provision discussed in Hunter. The voters of Mississippi willingly broadened § 241 through the constitutional amendment process to include violent criminal acts not previously included in the list of disenfranchising crimes. The Alabama alterations, on the other hand, were made through the judicial process of striking certain crimes which had the effect of limiting the coverage of the disenfranchising clause. See Hunter 471 U.S. at 228, 105 S. Ct. 1920. Only these latter, "involuntary" amendments were discounted by the Supreme Court.

[9]We also note that Brown offered no evidence, and the state did not concede, that the effect of § 241 is discriminatory against blacks, yet Hunter also requires unconstitutional effects as well as motive. Supra.

6