# SUPREME COURT OF THE UNITED STATES

## ROY HARNESS, ET AL. *v.* MICHAEL WATSON, MISSISSIPPI SECRETARY OF STATE

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 22–412.    Decided June 30, 2023

The petition for a writ of certiorari is denied.

JUSTICE JACKSON, with whom JUSTICE SOTOMAYOR joins, dissenting from the denial of certiorari.

The President of the 1890 Mississippi Constitutional Convention said it plain: "Let us tell the truth if it bursts the bottom of the Universe . . . We came here to exclude the negro.  Nothing short of this will answer."[1]  To further that agenda, the Convention placed nine crimes in §241 of the State's Constitution as bases for disenfranchisement, believing that more Black people would be convicted of those crimes than White people.  See *Williams* v. *Mississippi*, 170 U. S. 213, 222–223 (1898) (acknowledging that purpose, but expressing "no concern" regarding the Conventioneers' objective); *Ratliff* v. *Beale*, 74 Miss. 247, 265, 20 So. 865, 868 (1896) (similar); 47 F. 4th 296, 300 (CA5 2022) (*per curiam*) (en banc) (case below) (recognizing §241's discriminatory aim).

Eight of those crimes have remained in §241 since 1890, without interruption.  Thus, the Convention's avowed goals continue to be realized via its chosen mechanism: Today (just as in the Convention's aftermath), thousands of Black Mississippians cannot vote due to §241's operation.[2]  Peti-

---

[1] N. McMillen, Dark Journey: Black Mississippians in the Age of Jim Crow 41 (1989) (McMillen) (internal quotation marks omitted); see also *id.*, at 39–43.

[2] See McMillen 44–48; Report of Dov Rothman in No. 3:17–cv–00791

tioners brought this legal action to challenge §241's continued use of the eight crimes as bases for felon disenfranchisement. 47 F. 4th, at 302.

The Court of Appeals for the Fifth Circuit properly recognized that, under this Court's settled precedent, the mere passage of time cannot insulate from constitutional challenge a law that was invidious at its inception. See *id.*, at 300, 304. That court could not escape acknowledging the similarities between this case and *Hunter* v. *Underwood*, 471 U. S. 222 (1985) (Rehnquist, J., for the Court), in which this Court unanimously invalidated an Alabama constitutional provision passed in 1901 because its "enactment was motivated by a desire to discriminate against blacks on account of race" and it "continue[d] to th[at] day to have that effect." *Id.*, at 233. But en route to affirming the District Court's grant of summary judgment against petitioners, the Fifth Circuit proceeded to make two egregious analytical errors that ought to be corrected.

First, it seized upon the idea that §241 had somehow been "reenacted" in full when the citizens of Mississippi twice amended parts of that provision years later. 47 F. 4th, at 306. To be sure, later amendments changed bases for disenfranchisement other than the eight at issue here: In 1950, burglary was removed from the list of disenfranchising crimes via the State's amendment processes, and, in 1968, murder and rape were added via the same processes. See *id.*, at 300–301. But, for federal constitutional purposes, the State never enacted any "new" version of the original eight grounds for disenfranchisement. In 1950, voters could have either removed burglary from §241 or left §241 unchanged. So, too, in 1968—voters could have added murder and rape or left §241 unchanged. *Id.*, at 319, 323–324 (Graves, J., dissenting). No other change to the original list

───────────

(SD Miss., Oct. 25, 2018), ECF Doc. 77–9, p. 6, ¶10.

of crimes was ever on offer. Therefore, the same discriminatory list of crimes that the 1890 Constitution's ratifiers "ma[d]e into law by authoritative act" operates to disenfranchise Mississippians who commit those crimes today. Black's Law Dictionary 666 (11th ed. 2019) (defining "enact").

Accordingly, the Fifth Circuit was wrong to believe that the amendments rendered the 1890 Convention's discriminatory purpose irrelevant and to reject petitioners' claim on the ground that they could show no discriminatory purpose, see 47 F. 4th, at 307, 309–310. Quite to the contrary, here, just as in *Hunter*, the "remaining crimes" from §241's pernicious origin still work the very harm the 1890 Convention intended—denying Black Mississippians the vote. 471 U. S., at 232–233.

Second, the Fifth Circuit's alternative holding—that even if §241 is tainted by discriminatory purpose, petitioners have no viable claim because the disenfranchisement provision would have been adopted anyway, see 47 F. 4th, at 310–311—was equally misguided. Under our well-established precedents, in order to defeat a challenge to a state law that was motivated by discriminatory purpose, the State bears the burden of showing that "the law would have been enacted without" that purpose. *Hunter*, 471 U. S., at 228. Here, the Fifth Circuit assumed for argument's sake that petitioners had shown discriminatory purpose, but concluded that the State had discharged its burden because certain legislators and a state task force considered recommending changes to §241's list of crimes in the 1980s. 47 F. 4th, at 302, 310. And the Fifth Circuit held that the State's burden was satisfied even though that consideration never yielded an actual change to §241. See *id.*, at 310–311.

This alternative holding was infused with the faulty "reenactment" rationale, insofar as the Fifth Circuit assumed, *arguendo*, "discriminatory intent arising *from the 1968* amendment." *Id.*, at 310 (emphasis added). Moreover,

and even more fundamentally, the Fifth Circuit misread (or misunderstood) this Court's holdings about the nature of the necessary inquiry. The burden is not to demonstrate a theoretical possibility that *any* legislature could have adopted the enactment at issue absent discrimination. Rather, courts must assess whether *the discriminatory actor* (here, the 1890 Convention) "would have" enacted the provision sans the discriminatory intent that was its actual motivation. *Hunter*, 471 U. S., at 228; see also *Arlington Heights* v. *Metropolitan Housing Development Corp.*, 429 U. S. 252, 270–271, and n. 21 (1977) (State's "burden" is to "establis[h] that the same decision *would have resulted*" (emphasis added)). And *that* question cannot possibly be answered by looking to the unconsummated considerations of legislative actors a near century after the enactment.

In sum, I would have granted this petition to correct the Fifth Circuit's clear and constitutionally momentous errors, and the Court could have done so in a straightforward and narrow (but significant) manner. All that is needed to resolve this dispute is (1) the indisputable fact that §241's disenfranchisement provisions were adopted for an illicit discriminatory purpose, and (2) the (unusually undeniable) understanding that, far from being subsequently "reenacted," §241 has persisted, without change—doing the harmful work that it was designed to do—ever since its initial invidious inception.

*       *       *

The other day, this Court declared that the "'Constitution deals with substance, not shadows,' and the [constitutional] prohibition against racial discrimination is 'levelled at the thing, not the name.'" *Students for Fair Admissions* v. *President and Fellows of Harvard College*, 600 U. S. ___, ___–___ (2023) (slip op., at 39–40). There are no shadows in §241, only the most toxic of substances.

Thus, the majority's decision *not* to take up this matter is

doubly unfortunate. We were asked to address this problem 125 years ago in *Williams*, and declined to do so. See 170 U. S., at 219–223, 225 (rejecting challenge to §241). And this Court blinks again today. So, at the same time that the Court undertakes to slay other giants, Mississippians can only hope that they will not have to wait another century for a judicial knight-errant. Constitutional wrongs do not right themselves. With its failure to take action, the Court has missed yet another opportunity to learn from its mistakes.