Sanford McLAUGHLIN, Plaintiff,

v.

CITY OF CANTON, MISSISSIPPI; The City of Canton, Mississippi Election Commission, By and Through Its Chairperson, William B. Crawford, E.F. Love, Bertille Carmichael, Individually and in Their Official Capacity as Members of the City of Canton, Mississippi, Election Commission, or of the State of Mississippi, and as Agent, Employee, Servant and/or Final Policymaker of Canton, Mississippi, or of the State of Mississip-

pi; Jewell Williams; Raymond E. Mabus, Governor of Mississippi; Mike Moore, Attorney General of Mississippi; Dick Molpus, Secretary of State of Mississippi, in Their Official Capacities and as Members of the Mississippi State Board of Election Commissioners, Defendants.

Civil Action No. 3:89–cv–359WS.

United States District Court, S.D. Mississippi, Jackson Division.

March 31, 1995.

958

Ellis Turnage, Ellis Turnage, Cleveland, MS, for Sanford McLaughlin.

William R. Collins, Montgomery, Smith–Vaniz & McGraw, Canton, MS, Susan Delaine Fahey, Phelps Dunbar, Jackson, MS, for City of Canton, Mississippi, City of Canton, Mississippi Election Commission, William B. Crawford, E.F. Love, Bertille Carmichael, Jewell Williams.

Mary Margaret Bowers, James F. Steel, Mississippi Attorney General's Office, Jackson, MS, for Raymond E. Mabus, Mike Moore, Dick Molpus.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

At the center of this lawsuit is § 241 [1] of the Mississippi Constitution [2], Article XII, the disenfranchisement provision. Denying the right of suffrage to those convicted of certain enumerated crimes, this provision withholds the designation of "qualified elector" from anyone who has been convicted of murder, rape, bribery, theft, arson, obtaining money or goods under false pretenses, perjury, forgery, embezzlement, or bigamy. Plaintiff herein, Sanford McLaughlin, an African–American male, claims that he has felt the sting of § 241 which, says plaintiff, is offensive to the United States Constitution. Consequently, in his complaint for declaratory and injunctive relief, plaintiff charges that

---

**1.** Miss. Const. art. XII, § 241 provides:

Every inhabitant of this state ... who is a citizen of the United States of America, eighteen (18) years old and upward, who has been a resident of this state for one (1) year, and for one (1) year in the county in which he offers to vote, and for six (6) months in the election precinct or in the incorporated city or town in which he offers to vote, and who is duly registered as provided in this article, and who has never been convicted of murder, rape, bribery, theft, arson, obtaining money or goods under false pretenses, perjury, forgery, embezzlement or bigamy, is declared to be a qualified elector....

**2.** The State of Mississippi is governed by its Constitution of 1890. This document was never submitted to the people; instead, it was put into operation by the body which framed it. *Ratliff v. Beale*, 74 Miss. 247, 256–66, 20 So. 865, 868 (1896).

§ 241 violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment,[3] as well as the Excessive Fine, and Cruel and Unusual Punishment Clauses of the Eighth Amendment.[4] Convinced that upon the undisputed facts he is entitled to a judgment, plaintiff urges this court to grant him summary judgment under Rule 56,[5] Federal Rules of Civil Procedure.

The defendants oppose the motion and, as part of their counterattack, submit various motions pursuant to Rule 12(b)–(1),[6] Federal Rules of Civil Procedure, which ask this court to dismiss this lawsuit. By their motions, defendants argue that this court lacks jurisdiction to hear this lawsuit because: (1) this case presents no "case and controversy" under Article III of the United States Constitution; (2) plaintiff lacks standing to pursue his claims; and (3) plaintiff's claims are barred by the Eleventh Amendment[7] of the United States Constitution.

As discussed in detail below, this court denies defendants' motion to dismiss but grants plaintiff's motion for summary judgment.

## I. *PARTIES AND JURISDICTION*

Plaintiff, a disqualified candidate for municipal office under § 241, is an African-American adult resident citizen of the City of Canton, Madison County, Mississippi. The defendants may be divided into two groups: the "municipal" defendants and the "state" defendants. The "municipal" defendants are comprised of: (1) the City of Canton, Mississippi, ("Canton"), a municipal corporation organized and existing under the laws of the State of Mississippi; (2) the Canton Election Commission, established pursuant to Miss. Code Ann. § 23–15–221, and responsible for conducting all municipal elections in Canton; (3) the members of the Canton Election Commission, all of whom are sued in their individual and official capacities: William B. Crawford, E.F. Love, and Bertille Carmichael; and (4) Jewell Williams ("Williams"), an adult resident citizen of Canton, Mississippi who, as plaintiff's rival for a municipal elective position, was the person who in a letter to the Canton Election Commission first questioned plaintiff's status as a qualified elector under § 241.

The group characterized as the "state" defendants includes the state's Governor, its Attorney General, and its Secretary of State. Plaintiff has named as a defendant the Mississippi State Board of Election Commissioners ("State Board") which is responsible for administering the state election laws. Section 23–15–211(1) of the Mississippi Code provides that the three commissioners of the State Board shall be the Governor, Secretary

3. The Due Process Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1, provides:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

4. U.S. Const. amend. VIII provides:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

5. Rule 56(a), Federal Rules of Civil Procedure, provides:

> (a) For Claimant. A party seeking to recover upon a claim, counterclaim, cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

6. Rule 12(b)(1) of the Federal Rules of Civil Procedure provides:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter; ...

7. U.S. Const. amend. XI, provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

of State, and the Attorney General. Accordingly, plaintiff names as defendants the former Governor, Raymond E. Mabus, the former and current Attorney General, Mike Moore, and the former and current Secretary of State, Dick Molpus. These defendants are sued in their official capacities and as members of the State Board.

This action is properly before the court pursuant to federal question jurisdiction, 28 U.S.C. § 1331, declaratory judgment jurisdiction, 28 U.S.C. §§ 2201, 2202, and civil rights and elective franchise jurisdiction pursuant to 28 U.S.C. § 1343–(a)(4). Since this action was removed to this court pursuant to 28 U.S.C. § 1441(a) & (b), this court exercises supplemental jurisdiction over plaintiff's state law-based claims pursuant to 28 U.S.C. § 1367(a). *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (discussing pendent jurisdiction).

## II. *FACTS AND CASE HISTORY*

On September 6, 1986, plaintiff registered to vote in Canton, Mississippi, and had his name listed on the voter rolls. Approximately one year later, a local grocery store filed a "Bad Check Affidavit" against the plaintiff in the Justice Court[8] of Madison County. The form affidavit states that "Sandford [sic] McLaughlin ... did wilfully deliver unto Jitney–Jungle ... his certain check" in the amount of $150.00 for which McLaughlin had insufficient funds on deposit. The form affidavit gave the affiant the option of choosing between "wilfully" or "feloniously" when describing the manner in which the purported bad check was delivered.

On January 21, 1988, despite being charged with a bad check offense, the plaintiff appeared in the Madison County Justice Court to answer to the charge of "false pretense after issuance & service of a bench warrant for his failure to appear." Judgement [sic], No. 45–145 (Miss.J.Ct. Jan. 21, 1988). Upon arraignment, plaintiff entered a guilty plea. Before the plea was accepted, Attorney Walter Wood appeared on behalf of plaintiff and made a motion asking the court to reduce the charge to a misdemeanor. *Id.* The court granted the motion and accepted defendant's plea to an unspecified misdemeanor count of "false pretenses." Plaintiff was fined $75.00 plus costs, ordered to pay $150.00 restitution, given a suspended sentence of five (5) days, and placed on six months' non-reporting probation.

In 1989, the plaintiff sought the Democratic Party's nomination for the aldermanic candidacy of Ward Four in Canton. Pursuant to Miss.Code Ann. § 23–15–309, plaintiff submitted the requisite $10.00 fee and properly qualified at least thirty (30) days prior to the first primary election. Thereafter, the Canton Democratic Executive Committee placed plaintiff's name on the municipal ballot for the May 21, 1989, Democratic Primary as an aldermanic candidate for Ward Four.

The plaintiff faced two other candidates in the democratic primary—Earl Nichols and defendant Jewell Williams. After Nichols won the primary, defendant Williams successfully challenged Nichols' residency. With Nichols disqualified, a new election was held between the plaintiff and defendant Williams, during which the plaintiff received a majority of the votes. Subsequently, the Canton Democratic Executive Committee certified the plaintiff as the Democratic aldermanic nominee for Ward Four. After the certification, however, defendant Williams wrote a letter to the defendant Canton Election Commission informing it that the plaintiff had been convicted of a disqualifying § 241 crime. After the receipt of Williams' letter, the Canton Election Commission sought an opinion from the Secretary of State, defendant Dick Molpus, regarding whether a misdemeanor conviction for false pretenses disqualifies one to be a candidate for public office. After qualifying his remarks, Mr. Phil Carter, Director of Elections for the Secretary of State, responded by letter dated June 1, 1989, stating that "Sec-

---

**8.** The Mississippi Justice Courts were formerly known as the Justice of the Peace Courts. *See* Miss. Const. art. VI, § 171 (Supp.1994). The "justice court shall have jurisdiction concurrent with the circuit court over all crimes whereof the punishment described does not extend beyond a fine and imprisonment in the county jail ...", that is, a misdemeanor, *see* Miss. Const. art. VI, § 171; *see also* Miss.Code Ann. § 99–33–1.

tion 241 does not specify that the conviction must be a felony conviction. It has been the consistent position of this office that a misdemeanor conviction of one of the specific crimes listed in Section 241 does disqualify one as a candidate for public office."

As a result, presumably acting under art. XII, § 250[9] of the Mississippi Constitution the Canton Election Commission refused to place the plaintiff's name on the June 6, 1989, municipal general election ballot. By default, defendant Williams then became the Democratic nominee of Ward Four and eventually won the aldermanship.

In June 1989, the plaintiff initiated suit in the Circuit Court of Madison County, Mississippi, against the municipal defendants, seeking declaratory and injunctive relief. Plaintiff also moved for a temporary restraining order and, or alternatively, a preliminary injunction. The Circuit Court of Madison denied the motion on June 5, 1989. The defendants then filed their notice of removal to this court pursuant to 28 U.S.C. § 1441(a) & (b).

Before this court on June 11, 1990, the plaintiff moved for partial summary judgment as to liability. On June 12, 1990, the defendants moved for summary judgment. This court ordered the plaintiff to file an Amended Complaint naming the State of Mississippi as a party defendant. Rather than naming the Governor or the Secretary of State, the plaintiff named the State Board and its then members, the previously referred to "state defendants." The plaintiff next filed a Second Amended Complaint wherein he alleges the following five constitutional causes of action and one state law

cause of action under supplemental jurisdiction: (1) that the actions of the defendants amounted to an arbitrary and capricious violation of his substantive and procedural due process rights under the Fourteenth Amendment; (2) that the defendants' actions constituted impermissible selective disenfranchisement in violation of the Equal Protection Clause of the Fourteenth Amendment; (3) that disenfranchisement for a misdemeanor violates the excessive fine and cruel and unusual punishment clause of the Eighth Amendment; (4) that disenfranchisement for a misdemeanor violates the Equal Protection Clause; and (5) that the disenfranchisement scheme of § 241 which mandates disenfranchisement only for certain specified crimes, to the exclusion of many others, violates the Equal Protection Clause.[10] Plaintiff's state law cause of action simply challenges whether plaintiff's guilty plea on a bad check charge constituted a conviction for false pretense. The plaintiff seeks declaratory and injunctive relief, as well as compensatory damages, attorney fees pursuant to 42 U.S.C. § 1988, and court costs.

The state defendants moved to dismiss or, alternatively, for summary judgment. However, on July 1, 1992, this court denied all of the parties' motions for summary judgment. Thereafter, after a series of conferences with the parties,[11] the state defendants filed their motion to dismiss pursuant to Rule 12(b)(1). Although styled as a separate motion, the municipal defendants merely adopted the state defendants' motion. Both motions argue that plaintiff's cause of action has evaporated due his alleged change of residence. Both sets of defendants also contend that the Eleventh Amendment bars this lawsuit.

---

**9.** Miss. Const. art. XII, § 250 provides:

All qualified electors and no others shall be eligible to office, except as otherwise provided in this Constitution; provided, however, that as to an office where no other qualification than that of being a qualified elector is provided by this Constitution, the legislature may, by law, fix additional qualifications for such office.

**10.** This fifth count is the closest the plaintiff ever comes to suggesting that § 241 of the 1890 Mississippi Constitution was the product of racial discrimination in violation of the Fourteenth Amendment. *See infra,* § VIII of this opinion.

**11.** During this time the court held a series of settlement conferences and also concerned itself with whether to consolidate the instant lawsuit with *David Hunter et al. v. Wilkinson County Board of Elections et al.,* Civil Action No. 5:92–cv–42W, a lawsuit with similar issues transferred to this court by Chief Judge William H. Barbour, Jr. Since there was the distinct possibility that a settlement of *Hunter* would encourage a like result in *McLaughlin,* the court conducted settlement talks in *Hunter* and held *McLaughlin* in abeyance. Later, Hunter indeed settled but did not have the impact upon *McLaughlin* expected by the court.

This court *sua sponte* has determined to revisit plaintiff's previously denied motion for summary judgment. The parties were so advised and invited to submit additional briefs and arguments. As previously mentioned, the court finds that plaintiff's motion for summary judgment has merit.

### III. *MOTIONS TO DISMISS*

Before reaching the merits of plaintiff's claims for relief, the court will address the defendants' motions to dismiss submitted pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The standard for dismissal is well known: the court must take the allegations of the complaint to be true unless it appears beyond a doubt that plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Carney v. Resolution Trust Corp.,* 19 F.3d 950, 954 (5th Cir.1994); *Hobbs v. Hawkins,* 968 F.2d 471, 475 (5th Cir.1992). Subject matter jurisdiction is determined at the time the complaint is filed. *Carney,* 19 F.3d at 954.

The defendants raise three arguments in support of their contention that this court lacks subject matter jurisdiction. First, argue defendants, plaintiff's request for injunctive and declaratory relief is moot and no longer a "case and controversy" inasmuch as he can no longer fulfill the requisite residency requirements to be an alderman in Canton. Secondly, defendants contend that plaintiff continues to be a qualified, registered voter in Madison County and, thus, lacks standing to bring a lawsuit for disenfranchisement. Thirdly, defendants aver that plaintiff's quest for monetary damages is barred by the Eleventh Amendment to the United States Constitution.

### A. Arguments Based on Lack of "Case and Controversy"

 Section 21–3–9 of the Mississippi Code provides that "[t]he mayor and members of the board of aldermen shall be qualified electors of the municipality and, in addition, the aldermen elected from and by wards shall be residents of their respective wards." Hence, it follows that in order to continue to pursue this lawsuit, plaintiff must show that his case and controversy is still vital, that he is otherwise still qualified by residence to hold an alderman position. *See* Miss.Code Ann. § 21–3–9. If his residence has changed, plaintiff's lawsuit is subject to dismissal under the "mootness doctrine." This doctrine "encompasses the circumstances that destroy the justiciability of a suit previously suitable for determination. It is not enough that the initial requirements of standing and ripeness have been satisfied; the suit must remain alive throughout the course of litigation, to the moment of final appellate disposition." 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3533 (2d ed.1984). *See Deposit Guaranty Nat'l Bank v. Roper,* 445 U.S. 326, 332–33, 100 S.Ct. 1166, 1170, 63 L.Ed.2d 427 (1980) (noting that under the limits of Article III the definitive mootness of a case or controversy ousts the jurisdiction of the federal court and requires dismissal of cases).

According to an affidavit from the manager of Country Side Apartments in Ridgeland, supported by a copy of a lease agreement executed by plaintiff with the Country Side Apartments, plaintiff and his wife have leased and maintained an apartment in Ridgeland, Mississippi, which, of course, is a municipality separate and apart from Canton, Mississippi. Nonetheless, plaintiff says that his residence is still Canton. He argues that the aforementioned lease agreement alone does not conclusively establish that his residence has changed. Plaintiff further maintains that he has voted and continues to vote in Canton. And, says plaintiff, it is undisputed that he was a resident of Canton at the time this controversy arose.

 Under the law of Mississippi, courts consider all of the available evidence to determine the residency of a person, evidence such as whether there is a manifested intent to abandon an old domicile and assume such at another, coupled with the whereabouts of one's physical presence and the permanency or indefiniteness of the stay. *Stubbs v. Stubbs,* 211 So.2d 821, 824 (Miss. 1968). The intention of the subject party, whether declared or inferred, is the most

weighted factor in determining residency. *Id.* at 825.

■ On an earlier day, the court held a full hearing to determine plaintiff's residency. As a result of the record developed during this hearing,[12] the court made a determination that plaintiff's residency is still Canton. Plaintiff has maintained throughout this litigation that his residence is Canton. He yet votes in Canton and, indeed, yet lives in a house there. The court is not persuaded that the act alone of leasing an apartment as a temporary abode in Ridgeland changes the status of his residence as a City of Canton elector.

### B. Argument on Standing to Sue

■ Relative to the defendants' second ground for dismissal, that plaintiff lacks standing to bring this lawsuit, the court finds that plaintiff has suffered an injury or threatened injury which confers upon him standing to bring this lawsuit. The court recognizes that in counts two and five of plaintiff's Second Amended Complaint plaintiff asserts that he has been disenfranchised in violation of the United States Constitution. The court also recognizes that plaintiff has admitted that his name has not been removed from the voter rolls and that he continues to vote in Madison County. This seeming incongruity, however, does not demonstrate a lack of identifiable injury to confer standing.

"Standing" under Article III of the United States Constitution[13] requires an allegation of present or immediate injury in fact, where the party requesting standing has "alleged such personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens presentation of issues." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). In other words, there must be some causal connection between the asserted injury and challenged action, and the injury must be of the type "likely to be redressed by a favorable decision." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 473, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). *See Phillips Petro. Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); *Canfield Aviation, Inc. v. National Transp. Safety Bd.,* 854 F.2d 745 (5th Cir.1988).

This court is convinced that plaintiff has suffered an injury or threatened injury which confers upon him standing to bring this lawsuit. Plaintiff was removed from the general election ballot under § 241 which states that any person convicted of, among other crimes, false pretenses is not a qualified elector. Section 23–15–11[14] of the Mississippi Code states that any person convicted of any of the crimes listed in § 241 shall not be allowed to vote. The defendants' failure to take additional steps to remove plaintiff's name from the voter rolls appears to have been a mere oversight. The municipal defendants' removal of the plaintiff from the general election ballot, under § 250[15] of the Mississippi Constitution, could have been based only upon

> Every inhabitant of this state ... who is a citizen of the United States of America, eighteen (18) years old and upwards, who has resided in this state for thirty (30) days and for thirty (30) days in the county in which he offers to vote, and who shall have been duly registered as an elector by an officer of this state under the laws thereof, and who has never been convicted of a crime as listed in Section 241, Mississippi Constitution of 1890 shall be a qualified elector in and for the county, municipality and voting precinct of his residence, and shall be entitled to vote at any election. No others than those above included shall be entitled, or shall be allowed, to vote at any election.

**12.** By relying on facts beyond the complaint itself, the court has not converted this Rule 12(b)(1) motion to a Rule 56 motion for summary judgment. A motion to dismiss for lack of subject matter jurisdiction may be decided by the court on one of three bases: (1) the complaint alone; (2) the complaint as supplemented by undisputed facts in the record; or (3) the complaint as supplemented both by disputed facts in the record and by the district court's resolution of disputed facts. *Ynclan v. Department of Air Force,* 943 F.2d 1388, 1390 (5th Cir.1991).

**13.** U.S. Const. art. III, § 2, cl. 1 provides:
The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority; ....

**14.** Miss.Code Ann. § 23–15–11 provides:

**15.** See footnote number 9.

the plaintiff's disenfranchisement under § 241. It is, therefore, disingenuous for the defendants now to argue that the plaintiff has no standing to bring this action on the grounds of disenfranchisement. Defendants yet contend that plaintiff is not a "qualified elector" under § 241 of the Mississippi Constitution and, if correct, at their whim they could later remove him from the Canton, Mississippi, voter rolls. The defendants' failure to do so presently should not, under these circumstances, insulate them from an otherwise valid cause of action based on disenfranchisement.

### C. Argument on Eleventh Amendment Immunity

Relative to their third argument, defendants say that the Eleventh Amendment [16] bars plaintiff's request for monetary damages. Based upon the nature of the relief he seeks, plaintiff disagrees. Further, plaintiff argues that the municipal defendants and the defendants in their individual capacity do not enjoy any Eleventh Amendment immunity. This court will address the Eleventh Amendment issues with respect to each of the various groups and capacities of the defendants.

### 1. State Defendants in Their Official Capacities

■ The Eleventh Amendment to the United States Constitution prohibits suits in federal courts against state governments in law, equity, or admiralty by a state's own citizens, by citizens of another state, or by citizens of foreign countries. *See* Erwin Chemerinsky, *Federal Jurisdiction,* p. 325 (1989). The Eleventh Amendment also precludes suits in federal court against state officials if " 'the state is the real substantial party in interest.' " *Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (quoting *Ford Motor Co. v. Department of Treas. of Ind.,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945)). Thus, suits against state officials for monetary damages are barred if the damages would be paid from the state treasury. *See Ford Motor*

*Co.,* 323 U.S. at 464, 65 S.Ct. at 350; *see also* Chemerinsky, *supra,* at 344.

Further, suits against state officials seeking injunctive relief also are barred if the suit is against the state, or if any " 'decree would operate against the [state].' " *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), quoting *Hawaii v. Gordon,* 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963). The *Pennhurst* Court held that federal courts are barred by the Eleventh Amendment from enjoining state officers from violating state law. *See Pennhurst,* 465 U.S. at 117–21, 104 S.Ct. at 917–19. This Eleventh Amendment bar applies to pendent state law claims as well. *Id.* at 118, 104 S.Ct. at 918.

There is, however, one major exception to the above restrictions. In *Ex parte Young,* 209 U.S. 123, 155–61, 28 S.Ct. 441, 452–54, 52 L.Ed. 714 (1908), the United States Supreme Court held that the Eleventh Amendment does not preclude suits against state officers for injunctive relief where the suit challenging the constitutionality of a state official's action is not one against the State. *Pennhurst,* 465 U.S. at 102, 104 S.Ct. at 909. The *Pennhurst* Court summarized *Young's* rationale:

[In *Young* ] a federal court enjoined the Attorney General of the State of Minnesota from bringing suit to enforce a state statute that allegedly violated the Fourteenth Amendment. This Court held that the Eleventh Amendment did not prohibit issuance of this injunction. The theory of the case was that an unconstitutional enactment is "void" and therefore does not "impart to [the officer] any immunity from responsibility to the supreme authority of the United States." *Id.,* at 160, 28 S.Ct., at 454. Since the State could not authorize the action, the officer was "stripped of his official or representative character and [was] subjected in his person to the consequences of his individual conduct."

---

16. The Eleventh Amendment to the United States Constitution states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prose-

cuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state." Erwin Chemerinsky, *Federal Jurisdiction* 325 (1989).

*Pennhurst,* at 102, 104 S.Ct. at 909. However, "when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief." *Edelman v. Jordan,* 415 U.S. 651, 666–67, 94 S.Ct. 1347, 1357–58, 39 L.Ed.2d 662 (1974).

■ Thus, under the *Young* doctrine, the plaintiff here may seek injunctive and, or alternatively, declaratory relief against the state defendants in their official capacities for alleged violations of his rights under the federal constitution and statutes.

■ Before proceeding further, this court addresses the claim of the Mississippi State Board of Election Commissioners ("State Board") that it has no connection with the enforcement of the disputed act, § 241 of the Mississippi Constitution, at least at the municipal level, where the alleged wrongs occurred. *See Young,* 209 U.S. at 157, 28 S.Ct. at 453 (holding that party seeking to enjoin an act of a state officer must show that officer has some connection with the enforcement of the act). The State Board asserts that, under the existing statutory scheme, "the State Board of Election Commissioners cannot take any action regarding a municipal election or the qualifications of a candidate therein or review the actions or non-actions of a municipal election commission." Rebuttal Br. State Def. in Supp.Mot. to Dismiss at 5. Plaintiff's Second Amended Complaint is silent on this point. *See* Mem.Br.Auth. in Supp. State Board's Mot. to Dismiss at 8. Thus, the state defendants argue that the requisite case or controversy does not exist between the plaintiff and the State Board.

Mississippi's statutory scheme regarding all primary and general elections (municipal, county, state and federal) imputes to county officials primarily, and municipal officials, secondarily, the responsibility for registering and disenfranchising voters. *See* Miss.Code Ann. § 23–15–31; [17] *see also* Miss.Code Ann. §§ 23–15–14, 23–15–35, 23–15–43, 23–15–45, 23–15–127, 23–15–151, 25–15–153, 23–15–171, 23–15–211, 23–15–213, 23–15–219, 23–15–221, 23–15–263, 23–15–265, 23–15–963. Thus, it appears that the proper state defendants are not the State Board and its members, but rather those state officials ultimately responsible for enforcing § 241, *i.e.,* the Attorney General and, or alternatively, the Governor, in their official capacities. Accordingly, the court finds that defendant Secretary of State Dick Molpus is not a proper party to this action.

## 2. Municipal Defendants in Their Official Capacities

The leading Fifth Circuit cases which articulate under what set of circumstances county or municipal officials will be treated as state agents in the context of a civil/constitutional rights action against such defendants are *Echols v. Parker,* 909 F.2d 795 (5th Cir. 1990), and *Familias Unidas v. Briscoe,* 619 F.2d 391 (5th Cir.1980). In *Echols,* arrestees brought a federal civil rights action against local officials, seeking a declaratory judgment that the Mississippi anti-boycott statute was unconstitutional. The Fifth Circuit held that the local officials were acting as state agents when they enforced the state's anti-boycott statute and were thus immunized. *See Echols,* 909 F.2d at 800–01.

Similarly, in *Familias Unidas,* a local Texas school board petitioned a Medina County Judge to order a citizen's group (Familias Unidas) to disclose its membership list. The Texas Education Code granted the judge this authority. The judge granted the petition, whereupon the citizen's group sued the judge and the school board for injunctive and de-

---

**17.** Miss.Code Ann. § 23–15–31 provides:

All the provisions of this subarticle shall be applicable, insofar as possible, to municipal, primary, general and special elections; and wherever therein any duty is imposed or any power or authority is conferred upon the county registrar, county election commissioners or county executive committee with reference to a state and county election, such duty shall likewise be imposed and such power and authority

shall likewise be conferred upon the municipal registrar, municipal election commission or municipal executive committee with reference to any municipal election. Any duty, obligation or responsibility imposed upon the registrar or upon the election commissioners, when applicable, shall likewise be conferred upon and devolved upon the appropriate party, executive committee or officials in any party primary.

claratory relief. Relative to the county's liability, the *Familias Unidas* Court stated:

> We do not, however, believe that Judge Decker's compliance with the school board request ... similarly represented the official policy of Medina County.... The narrow authority delegated to the county judge in § 4.28 [Tex.Educ.Code], however, bears no relation to his traditional role in the administration of county government or to the discretionary powers delegated to him by state statute in aid of that role. Instead, his duty in implementing section 4.28, much like that of a county sheriff in enforcing a state law, may more fairly be characterized as the effectuation of the policy of the State of Texas embodied in that statute, for which the citizens of a particular county should not bear singular responsibility.

619 F.2d at 404.

■ The municipal defendants here, like the local defendants in *Echols* and *Familias Unidas,* were merely enforcing a state statutory scheme which they believed to be unambiguous on its face and which reflected state, rather than county, policy. *See Wyatt v. Cole,* 928 F.2d 718, 723 (5th Cir.1991) (holding that Mississippi county officials act as state agents when they enforce Mississippi statutes). That the municipal defendants here were not enforcing municipal policy is further supported by their reliance on the Secretary of State's interpretation of § 241. Thus, as stated by the *Echols* Court:

> The state cannot dissociate itself from actions taken under its laws by labelling those it commands to act as local officials. A county official pursues his duties as a state agent when he is enforcing state law or policy.

*Echols,* 909 F.2d at 801.

The plaintiff contends that *Crane v. Texas,* 759 F.2d 412 (5th Cir.1985), rather than *Echols* or *Familias Unidas,* is controlling. However, *Crane* is easily distinguishable. In *Crane,* the defendant, a district attorney, was found not to be a state official for Eleventh Amendment purposes when he was sued for enforcing an unconstitutional *county* policy of issuing misdemeanor arrest warrants without probable cause. 759 F.2d at 428–30. *See*

*Echols,* 909 F.2d at 800–01. In the case *sub judice,* the actions of the municipal defendants were clearly directed by state statute, namely, the Mississippi Election Code.

So, while the Eleventh Amendment shields the municipal defendants from liability for monetary damages, these defendants remain subject to the declaratory and injunctive powers of the court for the reasons outlined in III.C.1.

### 3. State and Municipal Defendants in Their Individual Capacities

■ Under the rubric articulated in *Harlow v. Fitzgerald,* 457 U.S. 800, 817, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the individual liability of the defendants here is shielded by qualified immunity. In *Harlow,* the Court held that government officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2738 (citing *Procunier v. Navarette,* 434 U.S. 555, 565, 98 S.Ct. 855, 861, 55 L.Ed.2d 24 (1978)). Although *Harlow* involved an action against federal officials, this "objective" standard also is applicable to the case at bar. The *Harlow* Court stated:

> This case involves no issue concerning the elements of the immunity available to state officials sued for constitutional violations under 42 U.S.C. § 1983. We have found previously, however, that it would be "untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials." *Butz v. Economou,* 438 U.S., at 504, 98 S.Ct., at 2902.

457 U.S. at 818 n. 30, 102 S.Ct. at 2738 n. 30. The defendants herein followed what they believed to be the clear language of § 241. Further, the municipal defendants requested an opinion from the Secretary of State who informed them that a misdemeanor conviction for one of the offenses listed in § 241 mandated disenfranchisement. Thus, under the "objective legal reasonableness" test, this court finds that the actions of the defendants

in their individual capacities are protected by *Harlow*'s doctrine of qualified immunity.

### 4. Municipal Defendants and State Law

Plaintiff then asserts that the municipal defendants are individually liable because, allegedly, they violated certain provisions of the Mississippi Code. Defendants challenge the accusation, and this court agrees with the defendants.

First, the plaintiff asserts that the municipal defendants violated the plaintiff's rights by removing plaintiff's name from the ballot, while failing to accord him a quo warranto proceeding under Miss.Code Ann. § 11–39–1. Quo warranto is a common law writ designed to test whether a person exercising power is legally entitled to do so. It is an uncommon, discretionary proceeding addressed to preventing a continued exercise of authority unlawfully asserted. *See* Black's Law Dictionary 1256–57 (6th ed. 1990). Contrary to plaintiff's argument, the writ is not applicable to these circumstances.

Under Mississippi law, a quo warranto proceeding, brought in the name of the state, lies where a person is currently holding an elective position, and his/her right to continued possession of that office is in question. It is a trial of one's right to an office. The respondent must be in actual possession and use of the office in question; it is not sufficient for the information to show that the respondent lays some claim to the office without usurping the functions thereof. *O'Neal v. Fairley,* 190 Miss. 650, 200 So. 722, 723 (1941); *McKenzie v. Thompson,* 186 Miss. 524, 191 So. 487, 488 (1939).

Here, plaintiff had merely been certified as the democratic nominee for Ward Four; he had not been seated as an alderman, nor exercised the functions of such. Nowhere does the language, spirit, or interpretative judicial cases of § 11–39–1 indicate that it is applicable to a scenario where an alleged unqualified nominee is removed from a general election ballot. The facts and jurisprudence persuade this court that the municipal defendants here were not required to file a quo warranto proceeding to remove the plaintiff from the ballot at issue.

Secondly, plaintiff claims that the municipal defendants violated Miss.Code Ann. § 23–15–309(4) which requires the proper municipal executive committee to determine whether each candidate is a qualified elector, and whether any candidate has been convicted of a § 241 crime. On its face, § 23–15–309(4) applies to "municipal executive committee[s]," not municipal election commissions. *See* Miss.Code Ann. § 23–15–309(4).

There is a crucial distinction between a municipal executive committee and a municipal election commission. *See* Miss.Code Ann. §§ 23–15–211, 23–15–221, and 23–15–313. Municipal executive committees act on behalf of political parties, while the municipal election commission acts at the behest of the state. Nowhere in § 23–15–309(4) is it suggested that municipal executive committees are vested with the ultimate authority to determine whether a nominee's name ultimately will appear on the ballot. Rather, § 23–15–309(4) merely states that if a municipal executive committee finds that a nominee is unqualified, the nominee's name will not be placed on the ballot.

An inquiry into a nominee's qualification by a municipal executive committee, however, does not alter the municipal election commission from making a similar inquiry. *See Powe v. Forrest County Election Commission,* 249 Miss. 757, 163 So.2d 656, 659 (1964) (holding that the commission "has the authority to determine whether or not a person is qualified as a candidate for public office").

Thirdly, the plaintiff claims that the municipal defendants violated Miss.Code Ann. § 23–15–359 which provides that the ballot shall contain the names of all candidates who have been in nomination, not less than sixty (60) days previous to the day of the election, by the primary election of any political party. Because the municipal executive committee for the Democratic Party certified him as the aldermanic nominee, plaintiff contends that, pursuant to § 23–15–359, his name should have been placed on the ballot. Plaintiff's argument is without merit.

The caption of § 23–15–359 plainly states that it is inapplicable to municipal elections. Subsection (6) of § 23–15–359 likewise states that the provisions of the section do not govern municipal elections. More importantly, as stated above, the municipal election commission possessed the requisite authority to determine whether plaintiff qualified as a candidate.

■ Fourthly, the plaintiff argues that the municipal defendants violated Miss.Code Ann. § 23–15–361 which merely states, in part, that:

> [t]he municipal general election ballot shall contain the names of all candidates who have been put in nomination by the municipal primary election of any political party. There shall be printed on the ballots the names of all persons so nominated, whether the nomination be otherwise known or not. . . .

The plaintiff points to no duty contained in § 23–15–361 which the municipal defendants violated. Indeed, there is none. As stated above, the mere fact that a person wins the nomination of his/her party does not necessarily mean that his/her names must appear on the ballot. The election commission is free to pass upon the qualifications of a party's nominee. *See Powe*, 163 So.2d at 659. It follows then that if the municipal election commission determines that a party's nominee is disqualified for public office, the commission is not required to place the nominee's name on the ballot merely because it was submitted by a party's executive committee.

Fifthly, the plaintiff asserts that the municipal defendants violated Miss.Code Ann. § 23–15–153(1) which states that "at the following times the commissioners of election shall meet at the office of the registrar and carefully revise the registration books and the pollbooks of the several voting precincts, and shall erase therefrom the names of all persons erroneously thereon, or who have died, removed or become disqualified as electors from any cause; and shall register the names of all persons who have duly applied to be registered and have been illegally denied registration . . . [n]o name shall be permitted to remain on the pollbooks except such as are duly qualified to vote in the election."

In essence, the plaintiff's claim is that his name should have been removed only during a statutory meeting, and, moreover, that if his name had been removed, the names of persons similarly situated also should have been removed. Plaintiff, however, lists the names of other persons convicted of false pretenses, whose names still appeared on the pollbooks after the removal of his name. Because this court finds that plaintiff's name should not have been removed as § 241 does not encompass misdemeanor offenses, it would be disingenuous to suggest that the same unlawful action taken against plaintiff should have been visited upon others similarly situated.

■ Moreover, the municipal defendants' alleged failure to uniformly comply with § 23–15–153(1) could only trigger the municipal defendants' individual liability with respect to the plaintiff's selective enforcement claim. However, the only possible remedy for a selective enforcement claim would be the disenfranchisement of any others improperly allowed to remain on the pollbooks. *See, e.g., Williams v. Taylor*, 677 F.2d 510, 517 (5th Cir.1982) (finding that where district court finds selective enforcement of Mississippi's disenfranchising statute, the sole relief is the fair and consistent enforcement of the statute against all felons who fall within it). As stated above, because we find that the offense with which plaintiff was charged does not fall within the crimes set forth in § 241 and that his name should not have been removed from the pollbooks, his claim of selective enforcement must fall since a finding in plaintiff's favor on the selective enforcement claim would allow the municipal election commission to unlawfully remove others from the pollbooks.

In summary, persuaded by the above reasoning, this court is satisfied that defendants' motions to dismiss are unfounded in fact or in law. Accordingly, the motions are denied.

### 5. Defendant Williams

■ Although no formal motion is before the court on Williams' inclusion in this law-

suit, the defendants have remarked that her presence here is unfounded. This court agrees. The plaintiff has not advanced a conceivable theory under which defendant Williams could be liable. At the time of the events alleged, defendant Williams was not a state actor; she was merely an aldermanic candidate, who reported an ambiguous circumstance to the Canton Election Commission as to whether plaintiff's conviction disqualified him for office under § 241. As a private citizen, she had no hand in enforcing or authoritatively interpreting § 241.

Moreover, defendant Williams' actions can not be characterized as those in concert with a state actor. Plaintiff has not presented the court with any cogent theory as to how Williams' action could be viewed as illegal or violative of plaintiff's rights. In sum, the court finds no circumstance which would trigger liability.

Having now disposed of defendants' motions to dismiss, the court now contemplates the issues which lie at the heart of this lawsuit. Beginning with an historical sketch of the Mississippi Constitution and the constitutional provision at issue, the court analyzes the false pretense provision of § 241 and provides its reasons for determining that § 241 does not encompass plaintiff's misdemeanor conviction, but that if it does, that this application of § 241 would be unconstitutional.

### IV. *AN HISTORICAL SKETCH OF MISSISSIPPI'S CONSTITUTIONAL AND STATUTORY DISENFRANCHISEMENT PROVISIONS*

The First Constitution of Mississippi, enacted on August 15, 1817, states that "[l]aws shall be made to exclude from office, and from suffrage, those who shall thereafter be convicted of bribery, perjury, forgery, or other high crimes or misdemeanors." Miss. Const. art. VI, § 5 (1817). The subsequent Mississippi Constitution of 1832 retained all of the disqualifying crimes of the 1817 Mississippi Constitution and added the crime of forgery. *See* Miss. Const. art. VII, § 4 (1832). And, the Mississippi Constitution of 1869 retained all of the disqualifying crimes

of the 1832 Mississippi Constitution. *See* Miss. Const. art. XII, § 2 (1869).

Historically, the Mississippi Code has contained statutory provisions which have mirrored the above state constitutional pronouncements. These statutory provisions will be referred to as "disenfranchising statutes." For example, the Mississippi Code of 1857 was in lockstep with the Mississippi Constitution of 1832 to the extent that the Code provided that "no person shall vote at any election, who shall have been convicted of bribery, perjury, forgery, or any other crime or misdemeanor for which the loss of the right of suffrage shall or may be imposed as a part of the penalty by any law of this State...." Rev.Code of Miss. § II, art. 16 (1857).

In 1870, following the cessation of the hostilities of the Civil War, the United States Congress passed a statute entitled, "An Act to admit the State of Mississippi to Representation in the Congress of the United States," which provided:

> That the constitution of Mississippi shall never be so amended or changed as to deprive any citizen or class of citizens of the United States of the right to vote who are entitled to vote by the constitution herein recognized, *except as a punishment for such crimes as are now felonies at common law,* whereof they shall have been duly convicted under laws equally applicable to all inhabitants of said State....

Act of Feb. 23, 1870, ch. 19, 16 Stat. 67, 68 (1870) (emphasis added). Following Mississippi's readmission to the Union in 1870, the Mississippi Legislature made changes to both the Mississippi Code and its Constitution and added to the list of disenfranchising crimes.

The disenfranchising statute contained in the Mississippi Code of 1871 was essentially that of its precursor contained in the Mississippi Code of 1857. *Compare* Rev.Code of Miss. § II, art. 16 (1857) *with* Rev.Code of Miss. art. II, § 343 (1871). The only difference being that the 1857 disenfranchising statute listed "bribery, perjury, forgery, or any other crime or misdemeanor" and the 1871 disenfranchising statute enumerated "bribery, perjury, forgery, or other infamous crimes...." The Mississippi Code of 1880

retained the disenfranchising crimes of bribery, perjury, forgery but also included "grand larceny or any felony". Rev.Code of Miss. § 108 (1880).

The Mississippi Constitution of 1890 marked a significant addition of disenfranchising crimes. Section 241 of the 1890 Mississippi Constitution retained bribery, perjury, forgery as disenfranchising crimes, but it also added burglary, theft, arson, obtaining money or goods under false pretense, embezzlement and bigamy. *See* Miss. Const. art. 12, § 241 (1890). So, although false pretenses historically had been a felony offense in Mississippi, it was not until the Mississippi Constitution of 1890 that false pretenses was included among the disenfranchising crimes. As one might expect, the Mississippi Code of 1892 conformed with the Constitution of 1890 and included a disenfranchising statute which enumerated "obtaining money or goods under false pretenses," along with the other § 241 crimes, as a disenfranchising crime.

 An historical examination of the disenfranchising crimes listed in the 1880 Mississippi Code and the 1892 Mississippi Code reveals that all of the subject disenfranchising crimes, with the possible exception of theft,[18] were felonies in 1890. The crimes of bribery, burglary, arson, obtaining money or goods by false pretense, perjury, forgery, embezzlement, and bigamy were all felonies under the 1880 statutory scheme. *See* Rev. Code of Miss. §§ 2727–2735, 2737–2743, 2705–2710, 2811, 2921–2929, 2817–2843, 2782–2790, 2721. Likewise, these crimes continued to be felonies under the 1892 statutory scheme.

## V. *FALSE PRETENSES AS A FELONY, DISENFRANCHISING CRIME*

As above stated, in 1890, when the Mississippi Constitution was written, the crime of false pretenses was a felony only. What

follows is a more detailed discussion of this finding.

At common law, the crime most comparable to false pretenses was cheating, and cheating was a misdemeanor. *See* 35 C.J.S. *False Pretenses* § 4, at 807. False pretenses was not a common law crime, but rather was a statutory modification of cheating. *See id.* at 802–03 (stating that the crime of obtaining property by false pretenses was unknown in the early common law until the creation of a false pretenses statute). The false pretenses statute was enacted to punish the wide variety of frauds that the common law offense of cheating did not encompass. *See id.* (citing 33 Hen. 8 c. 1); *Courtney v. State*, 174 Miss. 147, 164 So. 227, 228 (Miss.1935). The English statute which created the offense of false pretenses was adopted in basically the same form by the Mississippi legislature as early as 1839. *See* Miss.Code art. 12, tit. IV, § 53 (Hutch. 1798–1848).

On November 24, 1865, the Mississippi legislature adopted an act entitled "An Act to Establish County Courts." The third section of this act, on page 68, made "the obtaining of goods, money, or other property, by false pretenses, under the value of one hundred dollars, . . . a misdemeanor, [which] may be prosecuted in the county court." *Bowler v. State*, 41 Miss. 570, 575 (1867). The act establishing the county courts so modified the offense of false pretenses such that it was a felony only when the indictment charged the money or goods obtained to have been valued at or above one hundred dollars. *Id.*

Sometime prior to 1867, "[t]he offence of obtaining money or goods by false token or pretenses, to any amount, however small, [was] made by the statute [article 100, Rev. Code, 591] a felony, inasmuch as it is punishable by imprisonment in the penitentiary. Rev.Code, 630, art. 348." *Id.*

The statutory scheme underwent another transformation in 1870 when the Mississippi legislature abolished the county courts.

---

**18.** The offense known as theft is not defined in the Mississippi Code of any period. At common law, theft was "the taking of property of another from the possession of the owner with intent to defraud, or the felonious taking and carrying away of the personal property of another with intent to convert it to the use of the taker without the consent of the owner." 52A C.J.S. *Larceny* § 1(2), at 398 (1968). While "theft" is a popular term often identified with "larceny," the word "theft" is an umbrella term which includes other forms of wrongful taking. *Id.*

Section 1. *Be it enacted by the Legislature of the State of Mississippi,* That an act entitled "An Act to Establish County Courts," approved November 24, 1865, and all acts amendatory thereof, or supplemental thereto, be, and the same are hereby repealed.

Laws of the State of Miss., ch. XIII, § 1 (1870). Thus, in 1870, the statutory scheme reverted to the pre–1865 scheme whereby all false pretense offenses were considered felonies. This scheme remained in effect through 1890, when § 241 was enacted at the Mississippi Constitutional Convention of that year. This conclusion is supported by the definition of false pretenses and felony in the 1871 and 1892 Mississippi Codes. The 1871 Mississippi Code defines false pretenses and its punishment in § 2569 as follows:

> Every person, who, with, intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by any other false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, or valuable thing, upon conviction thereof, shall be punished by imprisonment in the penitentiary, not exceeding three years, or in a county jail, not exceeding one year, or by a fine, not exceeding three times the value of the money, property, or thing obtained, or by both such fine or imprisonment.

Miss.Code art. XVII, § 2569 (1871). The 1871 Mississippi Code contained the following definition of felony:

> § 2855. The terms "felony," or "infamous crime," when used in this code, shall be construed to mean offences punished with death, or confinement in the penitentiary.

Miss.Code § 2855.

Section 1086 of the 1892 Mississippi Code contains the identical definition of false pretenses as the 1871 Constitution. The punishment provision is only minimally changed:

> shall be punished by imprisonment in the penitentiary not exceeding three years, or in the county jail not exceeding one year, *and* by fine not exceeding three times the value of the money, property or thing obtained.

Miss.Code § 1086 (1892) (emphasis supplied). The only change is the underlined "and" which does not change the definition of false pretenses or affect the reasoning of this opinion. The 1892 Code defines felony exactly as it was defined in the 1871 Code. *Compare* Miss.Code § 1503 (1892) *with* Miss.Code § 2855 (1871).

## VI. *SECTION 241 DOES NOT DISENFRANCHISE PLAINTIFF*

### A. Section 241 Does Not Embrace Misdemeanor False Pretenses

 The court's inquiry into the historical underpinnings of § 241 and the penal character of false pretenses persuade this court that when included as a disenfranchising crime in the Mississippi Constitution of 1890, false pretenses was a felony only, since a misdemeanor false pretenses was then not recognized by Mississippi criminal law. This conclusion has obvious bearing on this lawsuit because plaintiff herein was convicted of a misdemeanor. The question then is whether the plaintiff may suffer disenfranchisement for a misdemeanor conviction for false pretenses where the authors of the Mississippi Constitution of 1890 viewed the offense of false pretenses solely as a felony. This court answers that interrogatory in the negative. Disenfranchisement is the harshest civil sanction imposed by a democratic society. When brought beneath its axe, the disenfranchised is severed from the body politic and condemned to the lowest form of citizenship, where voiceless at the ballot box the disenfranchised, the disinherited must sit idly by while others elect his civic leaders and while others choose the fiscal and governmental policies which will govern him and his family. Such a shadowy form of citizenship must not be imposed lightly; rather, only when the circumstances and the law clearly direct. Here, the direction is not clear. Section 241 with its draconian consequences cannot be stretched to include offenses not contemplated by its authors; the constitutional authors here visualized only a felony false pretense conviction. Hence, inasmuch as plaintiff here was convicted of a misdemeanor and not

a felony, plaintiff's conviction falls outside of § 241's reach.

## B. Plaintiff Was Not Convicted of False Pretenses

■ For its analysis in the preceding section whether § 241 embraces a misdemeanor false pretense conviction, this court accepted arguendo defendants' characterization of the conviction, that indeed plaintiff was convicted of a misdemeanor false pretense offense. Actually, this court does not accept this conclusion; instead, this court finds that plaintiff's conviction must be construed as a misdemeanor bad check conviction, another circumstance which falls outside of the thrust of § 241.

Neither the judgment nor the Circuit Court transcript is instructive as to what provision of the Mississippi Code plaintiff entered a plea of guilty. Everyone agrees that the plaintiff passed a bad check, which is expressly prohibited by Miss.Code Ann. § 97–19–55 [19] of the Mississippi "bad check" statute. See Miss.Code Ann. §§ 97–19–55 to 97–19–69 (rev. 1994). Further, in the Madison County Justice Court, an agent for the grocery store filed a "notice that [the] check has not been paid," on a form similar to that for bad checks as found in Miss.Code Ann. § 97–19–57(2). Plaintiff, however, pleaded guilty to an unspecified "false pretenses" misdemeanor. The crime of "false pretenses" relevant here is found at Miss.Code Ann. § 97–19–39, which provides as follows:

> Every person who with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by another false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, or valuable thing, upon conviction thereof, shall be punished by imprisonment in the penitentiary not exceeding three years, or in the county jail not exceeding one year, and by fine not exceeding three times the value of the money, property, or thing obtained.

■ The elements of false pretenses and those of bad check offenses are overlapping. See Blakeney v. State, 216 Miss. 211, 62 So.2d 313, 314 (1953); 35 C.J.S. False Pretenses § 21, at 833 (1960).

Yet, by focusing on substance rather than form, this court is persuaded that what is actually involved here is a bad check misdemeanor offense. The court's conclusion is reinforced by the facts underlying the offense, as well as by the structure of the penalty provisions of the respective statutes. A bad check offense under Miss.Code Ann. § 97–19–67(1)(d) lends itself to reduction to a misdemeanor according to subsections (1)(a) or (b) if the amount involved is less than one hundred (100) dollars.[20] A cursory examination of the false pretenses penalty statute, however, reveals no similar reduction provision. Compare Miss.Code Ann. § 97–19–39 with Miss.Code Ann. § 97–19–67. The definition of a felony contained in Miss.Code Ann. § 1–3–11 states that the term "felony" when used in any statute shall mean any violation of law "punished with death or confinement in the penitentiary." Under this definition, the crime of false pretenses, as a structural whole, can only be a felony. See Anthony v. State, 349 So.2d 1066, 1067 (Miss. 1977) ("this Court has adopted the rule that when the court or the jury is given the discretion to fix punishment for an offense by imprisonment in the penitentiary or by fine or confinement in the county jail, such of-

**19.** Miss.Code Ann. § 97–19–55 provides in pertinent part:

It shall be unlawful for any person with fraudulent intent to make, draw, issue, utter or deliver any check, draft or order for payment of money drawn on any bank, corporation, firm or person for the purpose of obtaining money, services or any article of value....

**20.** Miss.Code Ann. § 97–19–67(1)(a) and (b) provide in pertinent part:

(1) Except as may be otherwise provided by subsection (2) of this section, any person violating Section 97–19–55 upon conviction, shall be punished as follows:

(a) For the first offense of violating said section, where the check ... involved be less than One Hundred Dollars ($100.00), the person committing such offense shall be guilty of a misdemeanor ....

(b) Upon commission of a second offense of violating said section, where the check ... is less than One Hundred Dollars ($100.00), the person committing such offense shall be guilty of a misdemeanor ...

fense is held to be a felony regardless of the penalty actually imposed"); *State v. Sansome,* 133 Miss. 428, 97 So. 753, 754 (1923) ("[i]n testing an offense as to whether it is a felony or misdemeanor, the power given to imprison in the penitentiary determines it to be a felony").

■ The penalty provision of the bad check statute then is structurally distinct from the false pretenses statute; the false pretenses statute has no misdemeanor provision. The fact that the sentence for a false pretenses conviction carries the option of imprisonment in the county jail for a term not exceeding one year does not thereby "create" a false pretenses misdemeanor. *See Anthony,* 349 So.2d at 1067. The plaintiff's guilty plea to an unenumerated false pretenses offense must be viewed, therefore, as nothing more than a misdemeanor conviction of a bad check offense.

This conclusion is supported by another observation. The criminal jurisdiction of the Justice Court only extends to cases in which the "punishment described does not extend beyond a fine and imprisonment in the county jail ..." Miss. Const. art. VI, § 171; *see also* Miss.Code Ann. § 99–33–1. Since the penalty for false pretenses carries a maximum sentence in the penitentiary for three years, a Justice Court would not have had jurisdiction over such a case and would have been required to transfer the case to a Mississippi circuit court.

> If on the trial of any criminal case the justice of the peace discovers that it is a felony, and not a misdemeanor, of which the accused has been guilty, he shall not punish the offender nor render any judgment finally disposing of the case, but shall require him to give bail for his appearance in the circuit court, unless the felony be not bailable, in which case the justice shall commit him without bail.

Miss.Code Ann. § 99–33–13.

■ So, under the Mississippi Code of 1972, false pretenses appears to be a felony only. Although the false pretenses statute does not explicitly state whether the offense is a misdemeanor or a felony, the statute carries a penalty not exceeding three years in the penitentiary or not exceeding one year in the county jail, and, thus, can only be a felony. *See* Miss.Code Ann. § 1–3–11. Plaintiff herein pleaded to a misdemeanor. Accordingly, it appears that a "false pretenses" crime is not even implicated under this scenario.

The municipal defendants, however, point to a 1989 letter opinion rendered by the Attorney General of Mississippi which opines that a bad check conviction, regardless of the amount of the check, "constitutes a conviction for false pretense and thereby disqualifies the person so convicted as an elector." Priv. Ltr.Op.Miss.Att'y Gen. at 3, dated July 26, 1989, (Moore, M., Att'y Gen.).[21] Of course this letter is not binding authority on this court. *See Frazier v. Lowndes County, Miss., Bd. of Educ.,* 710 F.2d 1097, 1100 (5th Cir.1983).

## VII. *EQUAL PROTECTION CLAUSE VIOLATED*

This court also finds that the plaintiff's effective disenfranchisement for a guilty plea to a misdemeanor, whether false pretenses or to a misdemeanor bad check offense, violates the Equal Protection Clause of the Fourteenth Amendment. This is an issue of first impression, as far as this court can ascertain.

The Equal Protection Clause essentially requires that all persons similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). Accordingly, classifications that disadvantage a suspect class or that impinge upon the exercise of a fundamental right are treated as presumptively invidious; the state must demonstrate that its classification has been precisely tailored to serve a compelling governmental interest.

---

**21.** The Attorney General confusedly opines in this same letter that while a bad check offense, regardless of the amount of the check, disqualifies a candidate under the false pretenses provision of § 241, the misdemeanor crime of shoplifting, on the other hand, is not a disqualifying crime under the "theft" provision of Section 241. *See* Priv.Ltr.Op.Miss. Att'y Gen at 3 (citing Priv. Ltr.Op.Miss. Att'y Gen., at 1–2, dated Aug. 22, 1979 (Summer, A.F., Att'y Gen.)).

*Plyler,* 457 U.S. at 216–17, 102 S.Ct. at 2394–95. The case at bar concerns itself with the fundamental right of franchise.

"[T]he right to vote is not, *per se,* a constitutionally protected right." *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 35 n. 78, 93 S.Ct. 1278, 1298 n. 78, 36 L.Ed.2d 16 (1973). Of course, it is a well established principle that "a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn v. Blumstein,* 405 U.S. 330, 336, 92 S.Ct. 995, 1000, 31 L.Ed.2d 274 (1972). The United States Supreme Court has chosen to apply the strict scrutiny standard to voting because of the significance of the franchise as the guardian of all other rights. *Harper v. Virginia Bd. of Elections,* 383 U.S. 663, 667, 86 S.Ct. 1079, 1081, 16 L.Ed.2d 169 (1966); *Reynolds v. Sims,* 377 U.S. 533, 562, 84 S.Ct. 1362, 1381, 12 L.Ed.2d 506 (1964) (quoted in *Dunn,* 405 U.S. at 336, 92 S.Ct. at 999). In short, the state must show a substantial and compelling reason for restricting the right to vote. *Dunn,* 405 U.S. at 335, 92 S.Ct. at 999.

A statute which disenfranchises felons is not *a priori* violative of the Equal Protection Clause. *See Richardson v. Ramirez,* 418 U.S. 24, 54, 94 S.Ct. 2655, 2671, 41 L.Ed.2d 551 (1974) ("the exclusion of felons from the vote has an affirmative sanction in § 2 of the Fourteenth Amendment"). In fact, the Supreme Court has rejected the strict scrutiny standard of review in the context of a constitutional challenge to a state statute which disenfranchised felons in favor of a rational basis standard on account of § 2 of the Fourteenth Amendment. *See id.* at 54, 94 S.Ct. at 2671. Section 2 of the Fourteenth Amendment provides in part:

> Representatives shall be apportioned among the several states according to their respective numbers, ... But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the

United States, or in any way abridged, *except for participation in rebellion, or other crime,* the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such state. (emphasis added)

The United States Supreme Court in *Richardson* extensively discussed the legislative history underlying § 2 of the Fourteenth Amendment. That discussion makes clear that the "rebellion, or other crimes," language of § 2 does not encompass misdemeanors. *See id.* at 43–55, 94 S.Ct. at 2666–71. In the course of the Congressional debate over § 2, Representative Eckley of Ohio made the following observation in support of the language at issue:

> Under a Congressional act persons convicted of a crime against the laws of the United States, the penalty for which is imprisonment in the penitentiary, are now and always have been disfranchised, and a pardon did not restore them . . . .

> But suppose the mass of the people of a State are pirates, counterfeiters, or other criminals, would gentlemen be willing to repeal the laws now in force in order to give them an opportunity to land their piratical crafts come on shore to assist in the election of a president or members of Congress because they are numerous?

Cong. Globe, 39th Cong., 1st Sess. 2535 (quoted in *Richardson,* 418 U.S. at 46, 94 S.Ct. at 2667). Obviously, pirates and counterfeiters are felons, not misdemeanants. Representative Eckley also refers to "imprisonment in the penitentiary." *Id.* Imprisonment in a penitentiary is the key feature by which a felony is distinguishable from a misdemeanor. *See, e.g., Sansome,* 97 So. at 754.

Senator Johnson of Maryland described the criminals encompassed by the language at issue as "[m]urderers, robbers, houseburners, counterfeiters . . . ." Cong. Globe, 39th Cong., 1st Sess. 3029 (quoted in *Richardson,* 418 U.S. at 47, 94 S.Ct. at 2667). The *Richardson* Court also stated that:

> [f]urther light is shed on the understanding of those who framed and ratified the Fourteenth Amendment, and thus on the

meaning of § 2, by the fact that at the time of the adoption of the Amendment, 29 states had provisions in their constitutions which prohibited, or authorized the legislature to prohibit, *exercise of the franchise by persons convicted of felonies or infamous crimes.* *Id.* at 48, 94 S.Ct. at 2668 (emphasis added). A footnote listing the twenty-nine state constitutions referenced includes Miss. Const., art. 6, § 5 (1817). *See id.* at 48 n. 14, 94 S.Ct. at 2668 n. 14.

The *Richardson* Court also examined, and found significant, the congressional treatment of states readmitted to the Union following the Civil War. For every state readmitted, congressional action in the form of an enabling act was taken, and, as part of the readmission process, the state seeking readmission was required to submit its proposed constitution for the approval of Congress. *See id.* at 48–49, 94 S.Ct. at 2668. Section 5 of the Reconstruction Act established conditions under which the former Confederate states would be readmitted to representation in Congress. Section 5 provided in part:

> [t]hat when the people of any one of said rebel states shall have formed a constitution of government ... framed by a convention of delegates elected by the male citizens of said state, ... *except such as may lie disenfranchised for participation in the rebellion or for felony at common law,* ...

*Richardson,* 418 U.S. at 49–50, 94 S.Ct. at 2668–69 (emphasis in original). The *Richardson* Court then went on to discuss the legislative history of the Reconstruction Act, including the following remarks by Senator Henderson of Missouri:

> The Senate, being unwilling to embark on the experiment of pure military rule, modified the House Bill by adopting what is known as the Blaine or Sherman Amendment. ... It provided that when the Rebel States should adopt universal suffrage, regardless of color or race, excluding none, white or black, except for treason or such crimes as were felony at the common law....

*Id.* at 50, 94 S.Ct. at 2669 (quoting Cong. Globe, 39th Cong., 2d Sess. 1641 (1867)).

Congress passed a statute in 1870 entitled, "An Act to admit the State of Mississippi to Representation in the Congress of the United States," which provided that Mississippi's Constitution never be "amended or changed as to deprive any citizen or class of citizens of the United States of the right to vote who are entitled to vote by the constitution herein recognized ... *except as a punishment for such crimes as are now felonies at common law,* whereof they shall have been duly convicted under laws equally applicable to all inhabitants of said State...." Act of Feb. 23, 1870, ch. 19, 16 Stat. 67, 68 (1870) (emphasis added).

 Thus, this legislative history provides this court with a principled basis for distinguishing between the standards of review to be applied to those statutes which disenfranchise persons convicted of felonies and those statutes which disenfranchise persons convicted of misdemeanors. This court finds that in order to disenfranchise a class of otherwise qualified electors on the basis of a misdemeanor, the state must show that this classification is precisely tailored to serve some compelling governmental interest.

In addition, more common-sensical reasons lead this court to the conclusion that disenfranchisement for a misdemeanor falls under the strict scrutiny standard articulated in *Dunn,* rather than the lower-level scrutiny standard articulated in *Richardson.* The historical distinction between felonies and misdemeanors is more than semantic. Traditionally, dire sanctions have attached to felony convictions which have not attached to misdemeanor convictions. Many of these sanctions are in force today. Disenfranchisement was, and remains, one such sanction. Another such sanction is that which prohibits felons from owning or possessing firearms. *See, e.g.,* Miss.Code Ann. § 97–37–5. This court also notes that states frequently provide for expungement of misdemeanor, but not felony, convictions. *See, e.g.,* Miss.Code Ann. § 99–19–71 (permitting expungements for misdemeanor convictions before twenty-third birthday).

 This court is persuaded that the standard of review to be applied to the case

*sub judice* is the strict scrutiny standard of *Dunn v. Blumstein,* 405 U.S. at 342–43, 92 S.Ct. at 1003, rather than the rational basis standard of *Richardson v. Ramirez,* 418 U.S. at 56, 94 S.Ct. at 2671. Under strict scrutiny, the state must demonstrate a "substantial and compelling reason" for its disenfranchisement of the plaintiff for a misdemeanor false pretenses conviction. *See Dunn,* 405 U.S. at 343, 92 S.Ct. at 1003; *also see O'Brien v. Skinner,* 414 U.S. 524, 533, 94 S.Ct. 740, 745, 38 L.Ed.2d 702 (1974). Further, "the State cannot choose means that unnecessarily burden or restrict constitutionally protected activity. Statutes affecting constitutional rights must be drawn with 'precision.'" *Id.* (quoting *NAACP v. Button,* 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405 (1963)). Here, the state has not provided a compelling justification for its narrow interpretation of § 241.

The conclusion that the plaintiff's equal protection rights were violated is bolstered by the fact that he was disenfranchised on the basis of a misdemeanor conviction of false pretenses under somewhat confused factual circumstances. As discussed earlier, the plaintiff could as easily have been convicted of a misdemeanor bad check charge as false pretenses. In fact, the underlying statutory scheme and facts indicate that the plaintiff could have been convicted of a felony or misdemeanor bad check offense. Yet, under the defendants' current interpretation of § 241, if the plaintiff had been convicted of a bad check offense under Miss.Code Ann. § 97–19–67 (which specifically provides for a felony or a misdemeanor conviction), the plaintiff should still be disenfranchised because a bad check offense is a crime involving dishonesty. If § 241 truly concerns itself, in part, with crimes involving dishonesty, then shoplifting, for instance, should certainly be theft—a disenfranchising crime under § 241. *See* Miss.Code Ann. § 97–23–47 (containing both misdemeanor and felony provisions for shoplifting). In a private letter opinion, the Attorney General of Mississippi opined that a misdemeanor shoplifting offense was not a disqualifying crime. *See* Priv.Ltr.Op.Miss.Att'y Gen., dated August 22, 1979, at 1–2 (Summer, A.F., Att'y Gen.). If the court is to make any sense of the foregoing private letter opinion, then not all degrees of dishonest behavior were intended to disqualify voters. Whatever reason the state would have to disqualify a voter for a misdemeanor bad check offense but not other misdemeanor offenses such as shoplifting, that reason certainly is not compelling under the doctrine articulated in *Dunn. See Hobson v. Pow,* 434 F.Supp. 362, 367 (N.D.Ala. 1977) (holding that "[n]o compelling, or even rational, state policy has been suggested to explain why conviction of men for assault and battery against the spouse is a cause for disqualification while the conviction of women for the same offense is not disqualifying."); *Allen v. Ellisor,* 477 F.Supp. 321, 324 (D.S.C.1979) (holding that "[o]nce the State has classified offenses (for example, according to whether they are felonies or misdemeanors or according to the length of sentence), it may not haphazardly pick and choose for other purposes without showing a rational basis or (as in this case involving the right to vote) a compelling interest in doing so.")

## VIII. SUGGESTION OF DISCRIMINATORY INTENT

Plaintiff has suggested that § 241 of the Mississippi Constitution of 1890 was enacted with a racially-discriminatory intent and is, therefore, unconstitutional. No party has specifically briefed the point. Nonetheless, the suggestion that § 241 was enacted with racially-discriminatory intent disturbs the court and has caused the court to undertake its own research.

As the court earlier indicated, false pretenses along with burglary, theft, arson, embezzlement and bigamy became disenfranchising crimes in the 1890 Mississippi Constitution. Some scholars have suggested that the inclusion of these particular crimes was not coincidental, but instead was aimed at disenfranchising Mississippi's black population. *See generally* Note, Andrew L. Shapiro, *Challenging Criminal Disenfranchisement Under the Voting Rights Act: A New Strategy,* 103 Yale L.J. 537 (1993); Frank R. Parker, *The Mississippi Congressional Redistricting Case: A Case Study in*

*Minority Vote Dilution,* 28 How.L.J. 397 (1985); U.S. Comm'n on Civil Rights, Voting in Mississippi (1965).

After the Civil War, blacks comprised the majority of the electorate of Mississippi, since whites who had supported the Confederacy were denied the vote. Virtually all historians agree that this development was greeted by obstructionist whites with alarm. Virtually all historians also agree that disenfranchising tactics and methods, including literacy and property tests, poll taxes, understanding clauses, and grandfather clauses were adopted in hopes of reducing the enthusiasm and lessening the impact of the black vote.[22] Some historians have remarked that disenfranchising provisions in state constitutions for convictions of certain "black" crimes was one additional method explored.

In one of its opinions, the Mississippi Supreme Court itself has taken this view. Six years after the adoption of § 241, the Mississippi Supreme Court reviewed the new law and remarked that blacks were more likely than whites to be "convicted of bribery, burglary, theft, arson, obtaining money or goods under false pretenses, perjury, forgery, embezzlement or bigamy." *Ratliff v. Beale,* 74 Miss. 247, 256–66, 20 So. 865, 868 (1896). The Mississippi Supreme Court offered its insights into the intent of the drafters of the 1890 Constitution:

> [t]he convention swept the circle of expedients to obstruct the exercise of the franchise by the negro race. By reason of its previous condition of servitude and dependence, this race had acquired or accentuated certain particularities of habit, of temperament and of character, which clearly distinguished it, as a race, from that of the whites—a patient, docile people, but careless, landless, and migratory within narrow limits, without forethought, and its criminal members given rather to furtive offenses than to the robust crimes of the whites. Restrained by the federal constitution from discriminating against the negro race, the convention discriminated against its characteristics and the offenses

to which its weaker members were prone. . . . Burglary, theft, arson, and obtaining money under false pretenses were declared to be disqualifications, while robbery and murder, and other crimes in which violence was the principal ingredient, were not.

*Id.* at 266–67, 20 So. at 868. *See also Williams v. Mississippi,* 170 U.S. 213, 222–25, 18 S.Ct. 583, 587–88, 42 L.Ed. 1012 (1898) (acknowledging the racist intent of the 1890 Constitutional Convention but refusing to invalidate § 241 because the disenfranchising crimes do not discriminate on their face).

This historical account provided by the Mississippi Supreme Court seems to have substance as evidenced by the evolution of § 241 from 1890 to 1972. Although § 241 of the 1890 Constitution was amended for the first time in 1935, the amendments did not affect the enumerated crimes. In 1950, the crime of burglary was eliminated as a disenfranchising crime. *See* Miss.H.Con.Res. 10 (Feb. 10, 1950) (reported in 1950 Miss.Laws ch. 569). Then in 1968, § 241 was amended to include, for the first time, murder and rape as disenfranchising crimes. *See* Miss. H.Con.Res. 5 (Mar. 25, 1968) (reprinted in 1968 Miss.Laws ch. 614). If one is to believe the words of Chief Justice Cooper in *Ratliff* uttered six years after § 241 was first enacted, then the reason why the more "robust crimes" of murder and rape did not make their way into the Constitution until 1968 was because these crimes earlier were not deemed to be "black" crimes.

While this historical examination of § 241 is illuminating, the court need not reach today the issue whether the framers of the 1890 Mississippi Constitution were motivated by racially-discriminatory intent when they engrafted § 241 onto the Mississippi Constitution. While there is some indication that the Mississippi Constitutional Convention of 1890 enacted § 241 with the intent on disenfranchising black voters, at this stage of the litigation, this court can not make such a finding without the benefit of a trial and the presentation of evidence. *See Hunter v. Un-*

---

**22.** Andrew L. Shapiro, *Challenging Criminal Disenfranchisement Under the Voting Rights Act: A New Strategy,* 103 Yale L.J. 537 (1993).

*derwood,* 471 U.S. 222, 231, 105 S.Ct. 1916, 1922, 85 L.Ed.2d 222 (1985) (holding on the merits after trial that a provision in the Alabama Constitution disenfranchising persons convicted of crimes involving moral turpitude violated equal protection where, even though on its face it was racially neutral, original enactment was motivated by a desire to discriminate against blacks and provision had racially discriminatory impact since its adoption). As earlier mentioned, no party has specifically briefed this issue, although the parties have crossed verbal swords on the point. Perhaps satisfied that this issue is one for a trial on the merits, the parties have left this issue outstanding until another day.

## IX. *CONCLUSION*

Relative to the defendants' motion to dismiss, this court agrees with the defendants that plaintiff has not stated a cause of action against defendants Jewel Williams nor Secretary of State Dick Molpus. Accordingly, these two defendants are dismissed from this lawsuit. This court also agrees that plaintiff's request for monetary damages is barred by the Eleventh Amendment.

This court finds otherwise with regard to the other matters argued by defendants in their own motions. Consequently, this court finds that this case does present a "case and controversy" under Article III of the United States Constitution; that plaintiff has "standing" to pursue his claims; and, except for monetary damages, his claims are not barred by the Eleventh Amendment of the United States Constitution.

Addressing the merits, this court finds as a matter of law that plaintiff is entitled to declaratory and injunctive relief. This court holds that plaintiff's misdemeanor conviction does not fall within the grasp of § 241, since § 241 addresses the crime of felony false pretenses. Alternatively, even if § 241 is construed to embrace plaintiff's misdemeanor conviction, this court holds that this reach would be unconstitutional under the Equal Protection Clause of the Fourteenth Amendment.

This court's ruling on § 241 primarily concerns its provision on false pretenses. At various times, plaintiff has stated that § 241

was enacted with the racially, discriminatory intent to disenfranchise Mississippi's black population. Plaintiff's attack has credible support, as discussed in the opinion; however, the key points of this attack were not briefed, nor argued. Thus, the resolution of this issue must await another day.